# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | No. 4:20-CR-00106 |
|---|---|
| v. | (Judge Brann) |
| THOMAS STANKO, | |
| Defendant. | |

## MEMORANDUM OPINION

### MAY 4, 2021

## I. BACKGROUND

On May 28, 2020, Thomas Stanko was indicted by a grand jury on three counts, all related to a single, unregistered, sawed-off rifle.[1] This rifle was uncovered by law enforcement in October 2019 while executing a search warrant at a cabin owned by Stanko in Potter County, Pennsylvania.[2] Count One charges Stanko with possession of an unregistered sawed-off rifle in violation of 26 U.S.C. § 5861(d).[3] Count Two charges him with possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).[4] And Count Three charges him with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g).[5]

---

[1] Doc. 24 at 2-3.
[2] *Id.* at 3.
[3] Doc. 1.
[4] *Id.*
[5] *Id.*

In April 2018, Pennsylvania State Police executed a search warrant at Stanko's home in Latrobe, Pennsylvania in connection to a state investigation of Stanko.[6] The home was occupied by Stanko's mother at the time, and the search uncovered 28 firearms, several of which had been reported stolen.[7] Following this search, federal law enforcement began investigating Stanko for potential violations of federal firearms law in August 2018.[8]

On August 20, 2018, Pennsylvania State Police listened to calls made by Stanko from the Westmoreland County Jail (where he was incarcerated) to his girlfriend, Rebecca Pravlick, and to his mother.[9] During these calls, Stanko used coded language to describe specific locations in his Latrobe home where he had stored firearms.[10] For example, Stanko told his mother that he had placed an "item" in an antique clock within the home, and informed his mother that there were three or four more "of those" in the basement in a plastic tote stored near Christmas decorations in the home's game room.[11] With this information, on August 22, 2018, Pennsylvania State Police executed a second warrant at Stanko's Latrobe home and discovered four firearms.[12] These firearms were found in

---

[6] Doc. 24-1 ¶ 13.
[7] Id.
[8] Id. ¶ 12.
[9] Id. ¶ 15.
[10] Id.
[11] Id.
[12] Id. ¶ 18.

locations referred to by Stanko in the August 20 calls made to his mother and to Pravlick.[13]

On August 29, 2018, Pennsylvania State Police executed a third search warrant at a storage unit owned by Stanko in Westmoreland County, Pennsylvania.[14] This search was preceded by an interview with Stanko's former girlfriend, who indicated that Stanko owned the storage unit and kept firearms there.[15] Pennsylvania State Police also relied on a letter written by Stanko to Pravlick describing the storage unit in detail, and the fact that when Stanko gave Pravlick the letter, he spoke in a hushed tone and used hand signals to indicate to her that firearms were present in the storage unit.[16] The search uncovered thirteen additional firearms.[17]

Between April 2018 and October 23, 2018, during various phone calls Stanko made to his mother and Pravlick from the Westmoreland County Jail, Stanko repeatedly referenced a remote cabin that he owned in Potter County, Pennsylvania.[18] Stanko used various argot to refer to the cabin, including calling it the place "up North," "up yonder," "up there," or "where the coon dogs are."[19] He

---

[13] *Id.*
[14] *Id.* ¶ 21.
[15] *Id.* ¶ 20.
[16] *Id.*
[17] *Id.* ¶ 23.
[18] *Id.* ¶ 24.
[19] *Id.* A neighbor living near Stanko's Potter County cabin appears to own several coon dogs. *Id.*

3

asked his mother and Pravlick to take a trip together to check on the property and make sure that it was secure.[20] Stanko also instructed his mother to pay taxes on the property in cash or by money order "so as not to raise suspicion or alert law enforcement."[21] At no point, however, did Stanko refer to any specific item or items within the cabin, either in plain or coded language.

Federal Agent Jarod Chittum subsequently applied for a warrant to search Stanko's Potter County cabin on October 23, 2018.[22] Magistrate Judge William I. Arbuckle granted the warrant application on the same date.[23] The search, executed on October 25, 2018, uncovered a single, sawed-off shotgun.[24] The affidavit submitted in support of the warrant application premised probable cause on three facts, that:

- First, in previous communications, Stanko had used coded language and terminology to instruct Pravlick and his mother to move or secure firearms in properties that he owned, and searches of these properties and locations uncovered firearms;

- Second, Stanko instructed his mother to pay taxes on the property in cash or by money order to avoid alerting law enforcement; and

- Third, firearms are generally maintained and stored for long periods of time.[25]

---

[20] *Id.*
[21] *Id.*
[22] Doc. 24-1.
[23] Doc. 21 at 2.
[24] Doc. 21 at 3.
[25] Doc. 24-1 ¶¶ 25-30.

Stanko now moves to suppress the shotgun recovered from his Potter County cabin as the fruits of an unlawful search.[26] Stanko claims that the October 2018 warrant to search the cabin was not supported by probable cause because it did not contain facts demonstrating a fair probability that firearms would be found there. The Government contests this assertion, and maintains that Stanko's pattern of communications with his mother and Pravlick created probable cause. Alternatively, the Government argues that the good-faith exception applies.

The Court conducted an oral argument on Stanko's motion on April 23, 2020. This matter is now ripe for disposition; for the following reasons, Stanko's motion is granted.

## II. DISCUSSION

### A. Probable Cause

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[27] In general, to satisfy the reasonableness criteria, the Fourth Amendment "requires police to secure a warrant before conducting a search."[28]

---

[26] Doc. 20. He does not contest the validity of the preceding three searches.
[27] U.S. Const. Amend. IV.
[28] *Maryland v. Dyson*, 527 U.S. 465, 466 (1999).

To be valid under the Fourth Amendment, warrants must satisfy three requirements: (1) they must be issued by neutral, disinterested magistrates; (2) the person seeking the warrant "must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense"; and (3) the "'warrants must particularly describe the "things to be seized,"' as well as the place to be searched."[29] The parties presently dispute the second factor: whether the warrant to search Stanko's Potter County cabin was supported by probable cause.

When determining whether a warrant is supported by probable cause, "[a] reviewing court may not conduct a *de novo* review of a probable cause determination."[30] Rather, "[t]he duty of a reviewing court is 'simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'"[31] "[I]f a substantial basis exists to support the magistrate's probable cause finding, [this Court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant."[32] Although this Court must "not merely rubber stamp a magistrate's conclusions, [it] must

---

[29] *Dalia v. United States*, 441 U.S. 238, 255 (citations omitted).
[30] *United States v. Golson*, 743 F.3d 44, 53 (3d Cir. 2014) (citing *Illinois v. Gates,* 462 U.S. 213, 236 (1983)).
[31] *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *Gates,* 462 U.S. at 238 (ellipsis omitted)).
[32] *Id.* (internal quotation marks omitted).

6

heed the Supreme Court's direction that 'doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'"[33]

"A magistrate may find probable cause when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[34] The United States Court of Appeals for the Third Circuit has "held that probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules."[35] Further, "[t]he supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner."[36]

The Government argues that Stanko's pattern of communicating to his mother and Pravlick using coded language to provide instructions regarding firearms within his properties demonstrates probable cause. "Facts of past criminal activity that by themselves are too stale can be sufficient [to satisfy probable cause] if the affidavit establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence."[37]

---

[33] *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates,* 462 U.S. at 237 n.10 (internal citation omitted)).
[34] *Miknevich*, 638 F.3d at 182 (quoting *Gates,* 462 U.S. at 238).
[35] *Id.* (internal quotation marks omitted).
[36] *Id.*
[37] *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (first citing *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985); and then citing *United States v. Barlin*, 686 F.2d 81, 87-88 (2d Cir. 1982)).

7

Consequently, probable cause may be demonstrated by linking a defendant to an "ongoing conspiracy" or a continuous criminal scheme.[38]

That said, the Court finds this general rule inapplicable here and concludes that probable cause is lacking. First, Stanko's conduct does not constitute a "pattern." He twice used codes to indicate to his mother and Pravlick the location of firearms contained on his property. However, using coded language in different manners on two separate occasions is not enough to establish a pattern, even if both times Stanko was using the codes to refer to firearms. Further, Stanko's past references to specific items within his home and storage unit are distinguishable from the present case where Stanko has used veiled language to describe the general existence of his cabin, not any items within it.

Second, even if Stanko's use of code could constitute a pattern, it is not a pattern of "continuing criminal activity" giving rise to a belief that such activity is not a one-off occurrence. The cases applying this rule have generally only done so where a defendant is accused of participating in a criminal enterprise or conspiracy, most frequently involving drug distribution or trafficking.[39] In these instances, the criminal scheme is ongoing—in other words, it is reasonably

---

[38] *Id.* (citations omitted).
[39] Compare *id.*; *Fama*, 758 F.2d at 838; *Barlin*, 686 F.2d at 87-88. The Court notes that merely possessing (as opposed to trafficking) firearms unlawfully does not necessarily imply the existence of more firearms in other locations.

expected that other crimes will be committed in furtherance of the operation.⁴⁰ By comparison, possessing firearms (like possessing drugs) is more appropriately considered a one-off offense; once the contraband is confiscated, possession has ceased. Accordingly, unlike distribution or trafficking, the crime of possession alone does not necessarily imply *continuing* criminal activity.

Moreover, absent any link to a broader criminal conspiracy or pattern of conduct, the individual facts asserted are insufficient to establish probable cause. Even when considered together, the only three facts the affidavit cites in support fail to either give rise to an inference of criminal activity or are so generalized as to lack any connection to Stanko's cabin. Telling one's mother and girlfriend to check on and secure a property is not in and of itself criminal in nature. And while directing one's mother to not pay taxes by check to avoid alerting law enforcement is odd and certainly suspect, this fact alone does not tend to show that firearms are present in Stanko's Potter County cabin.⁴¹ The final fact regarding the general longevity of firearms is likewise too broad to give rise to probable cause specifically directed at Stanko's cabin. Consequently, the Court finds that the

---

⁴⁰ For example, one might expect to find narcotics in the home of a person engaged in a conspiracy to traffic drugs.

⁴¹ It is not clear from the affidavit whether Stanko actually stated that he wanted his mother to pay taxes by check or money order to avoid alerting law enforcement, or whether that was the agent's interpretation of his actual statements. Nevertheless, the Court finds that either construction is insufficient to establish probable cause because it does not tend to demonstrate the presence of *firearms* specifically.

9

affidavit supporting the October 2018 warrant of Stanko's Potter County cabin was unsupported by probable cause.

## B. Good-Faith Exception

The Court also rules that the good-faith exception does not apply. "The exclusionary rule is a prudential doctrine that prevents the government from relying at trial on evidence obtained in violation of the Fourth Amendment's strictures."[42] "However, the rule is *not* intended to remedy Fourth Amendment violations, and does not necessarily apply each time a violation occurs."[43]

"Accordingly, in determining whether the exclusionary rule applies, [this Court must] engage in a cost-benefit analysis, balancing the deterrence benefits of suppression against its substantial social costs."[44] The United States Supreme Court has made clear that "[s]uppression of evidence . . . has always been our last resort, not our first impulse."[45] Thus:

> Where the particular facts of a case indicate that law enforcement officers acted with an objectively reasonable good-faith belief that their conduct was lawful, or when their conduct involved only simple, isolated negligence, there is no illicit conduct to deter. In such circumstances, the deterrence rationale loses much of its force and exclusion cannot pay its way. Alternatively, where law enforcement conduct is deliberate, reckless, or grossly negligent or involves recurring or systemic negligence, deterrence holds greater value and often outweighs the associated costs.[46]

---

[42] *United States v. Werdene*, 883 F.3d 204, 215 (3d Cir.) (brackets and internal quotation marks omitted), *cert. denied*, 139 S. Ct. 260 (2018).
[43] *Id.*
[44] *Id.* (brackets and internal quotation marks omitted).
[45] *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).
[46] *Werdene*, 883 F.3d at 215-16.

The existence of a search warrant is usually sufficient to establish that an officer conducted a search in good faith, but there are cases in which an officer's reliance on a warrant is not reasonable and would fail to trigger the good faith exception.[47] In determining whether the good faith exception applies, this Court must determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."[48] This may occur in the following narrow situations:

(1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;

(3) when the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or

(4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.[49]

Stanko argues that the affidavit here was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." The Court agrees.

---

[47] *United States v. Hodge*, 246 F.3d 301, 307-08 (3d Cir. 2001).
[48] *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984).
[49] *Hodge*, 246 F.3d at 308 (brackets omitted).

As discussed above, nothing in the affidavit can be reasonably construed as implying the existence of firearms in Stanko's Potter County cabin. During Stanko's recorded calls, he never referred to specific items or containers within the cabin, asked either his mother or Pravlick to retrieve or move any items, or discussed the cabin with any specificity. The only references Stanko made to the cabin was to ask his mother and girlfriend to check on it and to ask his mother to pay property taxes on the cabin. Even taken together, these facts are plainly insufficient to support probable cause. Accordingly, Stanko's motion to suppress is granted.

## III. CONCLUSION

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge